1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHUKRULLO TAVUROV,

                    Petitioner,

    v.

KRISTI LYNN ARNOLD NOEM, et al.,

                  Respondent.

Case No. 2:26-cv-00138-TLF

ORDER GRANTING HABEAS
PETITION IN PART

11
12
13
14
15
16
17

      Petitioner Sukrullo Tavurov, a 20-year-old native of Tajikistan and a citizen of Russia and Tajikistan, is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1 (Petition); Dkt. 7 (Declaration of Javier Delgado ("Delgado Decl.")) at ¶ 3; Dkt. 8 (Declaration of Kristin B. Johnson ("Johnson Decl.")); Dkt. 8-2, Dkt. 8-4, (Exs. B, D). He has been detained since on or about May 3, 2024, when he crossed the border from Mexico into the United States at the age of 18 and requested asylum. *Id.*

18
19
20
21
22

      On January 14, 2026, petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, through counsel, arguing his continued detention under 8 U.S.C. § 1225(b) without a bond hearing violates his due process rights under the Fifth Amendment to the United States Constitution and the Eighth Amendment prohibition against excessive bail. *Id.*

23
24
25

      Petitioner seeks an order from the Court: (1) directing his immediate release; or, (2) that the Court hold a hearing if necessary and determine that petitioner's detention is

1 | not justified because the government has not established by clear and convincing
2 | evidence that petitioner presents a flight risk or danger in light of available alternatives
3 | to detention and order petitioner's release with appropriate conditions of supervision if
4 | necessary, taking into account petitioner's ability to pay bond; or (3) ordering petitioner
5 | released within 30 days unless respondents schedule a hearing before an immigration
6 | judge where to continue detention, the government must establish by clear and
7 | convincing evidence that petitioner presents a risk of flight or danger even after
8 | consideration of alternatives to detention that can mitigate any risk that his release
9 | would present and that the government must order petitioner's release on appropriate
10 | conditions if that burden is not met; and (4) issue a declaration that petitioner's ongoing
11 | prolonged detention violates the Due Process Clause of the Fifth Amendment and the
12 | Eighth Amendment; and (5) award petitioner's attorney's fees and costs under the
13 | Equal Access to Justice Act.

The Government has filed a return memorandum arguing petitioner's detention is lawful under 8 U.S.C. § 1225(b) and the Due Process Clause of the Fifth Amendment. Dkt. 8. Petitioner, represented by counsel, has filed a response/traverse. Dkt. 9.

The parties have unanimously consented to the jurisdiction of a Magistrate Judge. Dkt. 4. Having considered the parties' submissions, the balance of the record, and the governing law, the petition (Dkt. 1) is GRANTED IN PART, as provided below.

BACKGROUND

Petitioner is a native of Tajikistan and citizen of Russia and Tajikistan. Dkt. 7 (Delgado Decl.) at ¶ 3; Dkt. 8 (Johnson Decl.) at Exs. B, D. On May 3, 2024, petitioner applied to enter the United States from Mexico and was encountered by U.S. Customs

1   and Border Protection (CBP). *Id.* Petitioner admitted to CBP that he did not have any

2   documents that would allow him to enter the United States. *Id.* He was processed for

3   expedited removal. *Id.* While in CBP custody, petitioner expressed fear of returning to

4   Tajikistan and Russia. *Id.* CPB detained petitioner under INA § 235(b)(1) (codified at 8

5   U.S.C. § 1225(b)(1)). *Id.*

6        On May 24, 2024, petitioner was interviewed by a United States Citizenship and

7   Immigration Services ("USCIS") asylum officer who determined that petitioner had a

8   credible fear of return to Tajikistan. Dkt. 7 (Delgado Decl.) at ¶ 4; Dkt. 8 (Johnson Decl.)

9   at Ex. C. That same day, CBP issued a Notice to Appear (NTA) charging petitioner with

10  being removable pursuant to INA § 212(a)(7)(A)(i)(I) (codified at 8 U.S.C. §

11  1182(a)(7)(A)(i)(I) and placing him into removal proceedings. *Id.*

12       On September 4, 2024, petitioner filed an I-589, Application for Asylum and

13  Associated Relief with the Immigration Court. Dkt. 7 (Delgado Decl.) at ¶ 5. Petitioner

14  was transferred to NWIPC on September 10, 2024. *Id.* at ¶ 6.

15       On January 9, 2025, petitioner, through counsel, filed a motion to continue his

16  removal proceedings. Dkt. 7 (Delgado Decl.) at 2. The motion was granted on January

17  29, 2025, and the Immigration Court set a new hearing date for July 24, 2025. *Id.*

18       Petitioner applied for and, in May 2025, was granted Special Immigrant Juvenile

19  status (SIJ). Dkt. 1 at 4, 8-9; Dkt. 2 (Decl. of Marina Dzhamilova ("Dzhamilova Decl."))

20  at Ex. 1.

21       On July 11, 2025, the Immigration Court granted petitioner's motion for

22  substitution of counsel in his removal proceedings. Dkt. 7 (Delgado Decl.) at 2. On July

23  22, 2025, the Immigration Court granted petitioner's second motion to continue. *Id.* On

24

25

1  August 26, 2025, petitioner began his Individual Hearing regarding his Form I-589 but

2  the hearing was not completed on that date and was reset to October 2, 2025. *Id.* On

3  October 2, 2025, petitioner submitted additional testimony and evidence at the hearing,

4  but the hearing was not completed. *Id.*

5          On October 31, 2025, petitioner appeared with counsel at a bond hearing before

6  an Immigration Judge. *Id.* at ¶ 12; Dkt. 8 (Johnson Decl.) at Ex. E. The Immigration

7  Judge denied petitioner's bond due to lack of jurisdiction because petitioner was an

8  "arriving alien." *Id.* Petitioner requested reconsideration of the bond determination due

9  to changed circumstances based upon his grant of SIJ status and argued it should be

10  considered "as parole" of petitioner into the United States. Dkt. 1 at 9; Dkt. 9 (Traverse)

11  at 2.

12          On November 6, 2025, petitioner appeared and submitted additional testimony

13  and evidence at the Individual Hearing, but the hearing was not completed. Dkt. 7

14  (Delgado Decl.) at 2.

15          On November 17, 2025, the Immigration Judge denied petitioner's request for

16  reconsideration of the denial of bond finding no changed circumstances because

17  petitioner was still an "arriving alien." Dkt. 7 (Delgado Decl.) at ¶ 14; Dkt. 8 (Johnson

18  Decl.) at Ex. F.

19          On December 4, 2025, petitioner appeared to continue the Individual Hearing

20  and submitted additional testimony and evidence, and the hearing was completed. *Id.*

21  On December 15, 2025, the Immigration Judge issued a written order denying

22  petitioner's request for relief under form I-589, Application for Asylum and Associated

23  Relief, and ordered petitioner's removal to Russia. Dkt. 7 ("Delgado Decl.") at ¶ 16. On

24

25

December 18, 2025, petitioner filed a timely Notice of Appeal to the Board of

Immigration Appeals (BIA). *Id.* at ¶ 17. Petitioner's appeal remains pending. *Id.*

DISCUSSION

A.    Statutory Basis for Petitioner's Detention

Title 8 of the United States Code §§ 1225, 1226, and 1231 govern immigration

detention. "Where an alien falls within this statutory scheme can affect whether his

detention is mandatory or discretionary, as well as the kind of review process available

to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*,

534 F.3d 1053, 1057 (9th Cir. 2008).

The parties agree petitioner is detained under § 1225(b). Section 1225 applies to

"applicants for admission"—noncitizens[1] who "arrive[ ] in the United States," or are

"present" in the United States but have "not been admitted." 8 U.S.C. § 1225(a)(1).

Applicants for admission fall into two categories, those covered by § 1225(b)(1) and

those covered by § 1225(b)(2). *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Section 1225(b)(1), applies to, among others, noncitizens initially determined to be

inadmissible because of fraud, misrepresentation, or lack of valid documentation. *Id.*

(citing § 1225(b)(1)(A)(i)). Section 1225(b)(2) is broader and "serves as the catchall

provision that applies to all applicants for admission not covered by § 1225(b)(1)" (with

specific exceptions that neither party argues are applicable here). *Jennings*, 583 U.S. at

287-88 (citing §§1225(b)(2)(A), (B)).

---

[1] The Court uses the term "noncitizen" as equivalent to the term "alien" that is used in the statute. *See Nasrallah v. Barr,* 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

1   "Normally, noncitizens covered by § 1225(b)(1) are subject to an expedited

2   removal process that does not include a hearing before an Immigration Judge or review

3   of the removal order." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash.

4   2019) (citing 8 U.S.C. § 1225(b)(1)(A)(i)). But, where a noncitizen "indicates either an

5   intention to apply for asylum ... or a fear of persecution," the inspecting immigration

6   officer must refer that noncitizen for an interview with an asylum officer. 8 U.S.C. §

7   1225(b)(1)(A)(ii); 8 C.F.R. § 208.30(d). Thereafter, if the asylum officer determines that

8   the noncitizen has a credible fear of persecution, then the noncitizen "shall be detained

9   for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii);

10  *Banda*, 385 F. Supp. 3d at 1112.

11          Under § 1225(b), "the only opportunity for a noncitizen to be released pending a

12  decision on the asylum application is temporary parole 'for urgent humanitarian reasons

13  or significant public benefit.'" *Banda*, 385 F. Supp. 3d at 1112 (quoting 8 U.S.C. §

14  1182(d)(5)(A)); *see also* 8 C.F.R. §§ 212.5(b), 235.3. And the "statute does not impose

15  'any limit on the length of detention' pending a decision on the asylum application and

16  does not authorize bond hearings or release on bond." *Banda*, 385 F. Supp. 3d at 1112

17  (quoting *Jennings*, 583 U.S. at 296-301). As the Supreme Court in *Jennings*, held

18  "1225(b)(1) mandates detention 'for further consideration of the application for asylum,'

19  § 1225(b)(1)(B)(ii), and § 1225(b)(2) requires detention 'for a [removal] proceeding,' §

20  1225(b)(2)(A). The plain meaning of those phrases is that detention must continue until

21  immigration officers have finished 'consider [ing]' the application for asylum, §

22  1225(b)(1)(B)(ii), or until removal proceedings have concluded, § 1225(b)(2)(A)."

23  *Jennings*, 583 U.S. at 299.

24

25

ORDER GRANTING HABEAS PETITION IN PART - 6

B.      Due Process/The *Banda* Test

The right to be free from physical restraint by the Government is "at the heart of the liberty that [the Due Process Clause of the Fifth Amendment] protects". *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Confinement under this immigration statutory framework applies broadly; it is not limited to "a small segment of particularly dangerous individuals" *Id.* at 691 (quoting *Kansas v. Hendricks,* 521 U.S. 346, 356 (1997)). The procedural protection from unwarranted detention is an administrative proceeding, followed by judicial review. *Id.* at 692.

Even if the statutory terms of § 1225(b) do not require a bond hearing, petitioner's continued detention must still comport with due process. *See Boumediene v. Bush*, 553 U.S. 723, 797 (2008) (holding that habeas corpus applies to detainees who were classified as enemy combatants and held at Guantanamo Bay; "few exercises of judicial power are as legitimate or necessary as the responsibility to hear challenges to the authority of the Executive to imprison a person."); *Wing Wong v. United States*, 163 U.S. 228, 235-237 (1896) (under the Due Process Clause of the Fifth Amendment, temporary confinement is permissible for a noncitizen pending deportation but – compulsory labor, confiscation of property, or other punitive measures are not).

Neither the Supreme Court nor the Ninth Circuit have settled on a test for assessing the constitutionality of prolonged mandatory detention. *Banda*, 385 F. Supp. 3d at 1113.

The Court in *Banda,* as discussed below, applied a multi-factor analysis, and declined to apply the test of *Mathews v. Eldridge,* 424 U.S. 319, 334 (1976) to determine whether prolonged detention without a bond hearing, for a case where the

1    noncitizen is held under § 1225(b), violates procedural due process. *Banda,* at 1106.

2    The issue here, different from the question in *Mathews,* is "the more fundamental issue

3    of whether any procedure – such as a bond hearing – must be provided." *Id.* at 1106-

4    1107.

5          This district has held that "unreasonably prolonged detention under § 1225(b)

6    without a bond hearing violates due process." *Banda*, 385 F. Supp. 3d at 1106, 1117;

7    the Court reviews the following factors: "(1) the total length of detention to date; (2) the

8    likely duration of future detention; (3) the conditions of detention; (4) delays in the

9    removal proceedings caused by the detainee; (5) delays in the removal proceedings

10   caused by the government; and (6) the likelihood that the removal proceedings will

11   result in a final order of removal." *Id.* at 1106 (quoting *Jamal A. v. Whitaker*, 358 F.

12   Supp. 3d 853, 858-59 (D. Minn. 2019)). Where due process requires a bond hearing,

13   the Government must provide clear and convincing evidence to justify the noncitizen's

14   continued detention. *Id.* at 1107.

15         The parties do not appear to dispute that petitioner is subject to detention under

16   § 1225(b) and that the *Banda* analysis applies.[2] The Court applies the *Banda* analysis

17   to determine whether petitioner's continued detention without a bond hearing comports

18   with due process.

19         a.  Length of Detention

20         Under the *Banda* analysis, the length of detention is "the most important factor."

21   *Id.* at 1118. Petitioner has been in custody for 21 months.

22   _____

23   [2] The Court notes that petitioner's counsel mentions that she argued in the request to reconsider
     petitioner's denial of bond that he should be considered "paroled" into the United States based upon the
24   grant of SIJS. Dkt. 1. But petitioner does not specifically argue that the grant of SIJS shifts the statutory
     basis for petitioner's detention.

25

1    The Court finds that this factor favors petitioner. *See Banda*, 385 F. Supp. 3d at

2    1118 (finding this factor favored petitioner and granting bond hearing after 17 months

3    detention under § 1225(b) and collecting cases granting bond hearings after nine, ten,

4    sixteen, and nineteen months detention); *Cardozo v. Bostock*, No. 2:25-CV-00871-TMC,

5    2025 WL 2592275, at *1 (W.D. Wash. Sept. 8, 2025) (finding this factor favored

6    petitioner and granting bond hearing after 10 months detention under § 1225(b)).

7        b.  Likely Duration of Future Detention

8    The second factor requires consideration of "how long the detention is likely to

9    continue absent judicial intervention; in other words, the 'anticipated duration of all

10   removal proceedings—including administrative and judicial appeals.'" *Banda*, 385 F.

11   Supp. 3d at 1119 (quoting *Jamal A.*, 358 F. Supp. 3d at 859).

12   Here, on December 15, 2025, the Immigration Judge issued a written order

13   denying petitioner's request for relief under form I-589, Application for Asylum and

14   Associated Relief and ordering petitioner's removal to Russia. Petitioner has just

15   recently appealed this decision to the BIA and his appeal remains pending. Courts in

16   this District have observed that BIA appeals can take over six months. *See Nguyen v.*

17   *Scott*, C25-1988-SKV, Dkt. 15, pgs. 3-4 (citing *Toktosunov v. Wamsley*, 25-cv-1724-TL,

18   2025 WL 3492858, at *5 (W.D. Wash. Dec. 5, 2025)). And if petitioner's appeal to the

19   BIA is denied he has the right to appeal to the Ninth Circuit. According to the Ninth

20   Circuit's public website, it takes approximately 6 to 12 months from the date of the

21   notice of appeal to oral argument and, following argument, most cases take three

22   months to a year for the Court of Appeals to decide the case. *See* U.S. Court of Appeals

23   for the Ninth Circuit, Frequently Asked Questions,

24

25

ORDER GRANTING HABEAS PETITION IN PART - 9

1    www.ca9.uscourts.gov/content/faq.php (last accessed February 4, 2026). Respondents

2    also concede this factor likely favors petitioner. Dkt. 6 at 7.

3          While the Court cannot definitively determine the duration of petitioner's future

4    detention, based on the current record, it appears likely petitioner will face many more

5    months and potentially years in detention. *Barraza v. ICE Field Off. Dir.*, No. C23-1271-

6    BHS-MLP, 2023 WL 9600946, at *6 (W.D. Wash. Dec. 8, 2023), *report and*

7    *recommendation adopted sub nom. Barraza v. United States Immigr. & Customs Enf't*

8    *Field Off. Dir.*, No. C23-1271 BHS, 2024 WL 518945 (W.D. Wash. Feb. 9, 2024)

9    (cleaned up) (citing the Ninth Circuit website's timeline for appeals and noting that under

10   this timeline a petitioner who filed his petition for review with the Ninth Circuit a few

11   months prior could be facing two years or more of additional time in custody); *Banda*,

12   385 F. Supp. 3d at 1119 (finding this factor weighed in petitioner's favor where petitioner

13   who had "only recently" appealed the IJ's denial of his case to the BIA faced a process

14   that could "take up to two years or longer"); *Hong v. Mayorkas*, 2:20-cv-1784-RAJ-TLF,

15   2021 WL 8016749, at *4 (W.D. Wash., June 8, 2021) (finding this factor favored

16   petitioner where he faced "an additional 15 to 38 months" in detention because he was

17   at the "earliest stages" of pursuing a petition for review before the Court of Appeals).

18         The Court finds this factor favors petitioner.

19          c.  Conditions of Detention

20         Third, the Court considers the conditions of detention. "'The more that the

21   conditions under which the noncitizen is being held resemble penal confinement, the

22   stronger the argument that he is entitled to a bond hearing.'" *Barraza*, 2023 WL

23   9600946, at *6 (quoting *Jamal A.*, 358 F. Supp. 3d at 860). "A claim for punitive

24

25

1    detention requires a comparison of the conditions under which civil and criminal

2    detainees 'are held.'" *Ibarra-Perez v. Howard*, 468 F. Supp. 3d 1156, 1173 (D. Ariz.

3    2020) (citation omitted).

4         Petitioner is detained at NWIPC. In his petition he alleges he suffers from Major

5    Depressive Disorder, Moderate, with Mood Congruent Psychotic Features and from

6    Posttraumatic Stress Disorder and that he has not received proper or adequate medical

7    care for his health conditions while detained at NWIPC. Dkt. 1 at 23. Petitioner asserts

8    that in summer 2025 he attempted suicide by taking pills, cutting himself, and that he

9    admitted contemplating jumping off a second story balcony onto a concrete floor head-

10   first. *Id.* at 9; Dkt. 2 (Dzhamilova Decl.) at Ex. C. Petitioner was placed in monitored

11   isolation, he was given some medical attention, and some anxiety medication. *Id.*

12        Petitioner's attorney arranged a psychological evaluation which confirmed that he

13   suffers from Major Depressive Disorder, Moderate, with Mood Congruent Psychotic

14   Features and from Posttraumatic Stress Disorder. *See* Dkt. 2 (Dzhamilova Decl.) at Ex.

15   D. The evaluator found that petitioner's mental health conditions are directly related to

16   psychological and physical abuse by his father, which resulted in a suicide attempt

17   during early childhood. *Id.* His mental health condition was exacerbated by physical

18   abuse, threats, and torture he experienced while in police custody as a teenager in

19   Tajikistan. *Id.* Repeated trauma culminated in the development of Major Depressive

20   Disorder and PTSD. *Id.*

21        Petitioner asserts he has not received proper or adequate medical care for his

22   health conditions while in the custody of respondents. *Id.* Petitioner asserts he needs

23   long-term mental health treatment including individual counseling and medication

24

25

ORDER GRANTING HABEAS PETITION IN PART - 11

1    management to reduce symptoms of depression and PTSD and improve his

2    functioning. *Id.* He asserts his treatment efficacy will be enhanced by family and

3    community support, and he cannot get this level of treatment and support in detention.

4    *Id.*

5            The respondents contend that petitioner has not sufficiently alleged specific

6    conditions that he has been subjected to at NWIPC that resemble "penal confinement."

7    Dkt. 6 at 8.

8            In his response/traverse, petitioner makes more specific allegations showing that

9    the conditions of confinement at NWIPC are similar to penal confinement. Dkt. 9

10    (Traverse). Specifically, he alleges he is forced to sleep with a large number of people

11    in the same room, it is always loud and the lights are never completely turned off

12    interfering with his sleep, his outdoor time is extremely limited and often cancelled for

13    unknown reasons, he is not receiving adequate meals, the practice of his religion is

14    constrained by limitations placed on the ability to gather and pray, he is unable to obtain

15    books to read in his own language, has no access to education, and he has not

16    received adequate medical care for his mental health issues. Dkt. 9-1.

17            Furthermore, many "courts have [recently] found, detention conditions at NWIPC

18    are 'similar...to those in many prisons and jails.'" *Maliwat v. Scott*, No. 2:25-CV-00788-

19    TMC, 2025 WL 2256711, at *6 (W.D. Wash. Aug. 7, 2025); *Toktosunov*, 2025 WL

20    3492858, at *5 (W.D. Wash. Dec. 5, 2025) ("Courts in this District have...found that, at

21    this facility, under circumstances similar to that of Petitioner, this factor favors granting a

22    bond hearing."); *Amhirra v. Warden, Nw. Det. Ctr.*, No. 2:25-CV-01376-TL, 2025 WL

23    3718994, at *7 (W.D. Wash. Dec. 23, 2025) (same); *Doe*, 2024 WL 3291033, at *11

24

25

1   (citing cases); *Rahman v. Garland*, 24-cv-02132-JHC-TLF, 2025 WL 1920341, at *4

2   (W.D. Wash, June 26, 2025) (citing cases).

3         The Court finds this factor weighs heavily in favor of petitioner.

4          d.  Delays in Removal Proceedings

5         The fourth and fifth factors consider the nature and extent of any delays in the

6   removal proceedings caused by petitioner and the Government, respectively. "Petitioner

7   is entitled to raise legitimate defenses to removal ... and such challenges to his removal

8   cannot undermine his claim that detention has become unreasonable." *Martinez v.*

9   *Clark*, No. 18-1669, 2019 WL 5968089, at *10 (W.D. Wash. May 23, 2019), *R & R*

10  *adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (citations and internal

11  quotation marks omitted).

12        Yet Courts should be "sensitive to the possibility that dilatory tactics by the

13  removable [noncitizen] may serve not only to put off the final day of deportation, but also

14  to compel a determination that the [noncitizen] must be released because of the length

15  of his incarceration." *Id.* (citations and internal quotation marks omitted).

16        With respect to the Government, "[i]f immigration officials have caused delay, it

17  weighs in favor of finding continued detention unreasonable.... Continued detention will

18  also appear more unreasonable when the delay in the proceedings was caused by the

19  immigration court or other non-ICE government officials." *Sajous v. Decker*, No. 18-

20  2447, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018).

21        Even if "not the result of intentional action on behalf of government officials,

22  th[ese] delay[s] [are] attributable to the Government." *Martinez*, 2019 WL 5968089, at

23  *10 (citing *Sajous*, 2018 WL 2357266, at *11 ("the operative question should be whether

24

25

the [noncitizen] has been the cause of the delayed immigration proceeding and, where

the fault is attributable to some entity other than the [noncitizen], the factor will weigh in

favor of concluding that continued detention without a bond hearing is unreasonable"));

*Dukuray v. Decker*, No. 18-2898, 2018 WL 5292130, at *4 (S.D.N.Y. Oct. 25, 2018)

(weighing delay caused by immigration court in favor of the petitioner)).

The record shows that petitioner has not caused any delays that should be

reasonably attributed to him. There is nothing in the record to indicate that petitioner has

engaged in dilatory tactics. Although petitioner requested some continuances, he

represents the requests for continuances were necessary to substitute counsel and to

obtain evidence and prepare a complex asylum case while detained including obtaining

witness statements and documentary evidence including from individuals in another

country. Petitioner was entitled to raise legitimate defenses to removal and to the

opportunity to properly prepare those defenses.

Furthermore, there is no evidence that the Government has caused any delays

that should be reasonably attributed to it. It appears that petitioner's Individual Hearing

took three appearances to complete but there is no evidence, nor does petitioner argue,

that the continuances to complete the Individual Hearing should be attributable to the

Government.

Accordingly, the Court finds that the fourth and fifth factors are neutral.

e.  Likelihood of Final Order of Removal

The final factor involves consideration of "'the likelihood that the final proceedings

will culminate in a final order of removal.'" *Banda*, 385 F. Supp. 3d at 1120 (quoting

*Jamal A.*, 358 F. Supp. 3d at 860). The Court finds this sixth factor to be neutral.

1    The Court does not have sufficient information and declines to opine on the

2    potential merits of petitioner's requests for asylum and associated relief which is an

3    issue currently pending before the BIA. Petitioner also argues that because he was

4    granted SIJS he is *de facto* entitled to deferred action status which would protect him

5    from removal, indicating that proceedings are not likely to result in his removal.

6    Petitioner cites to *A.C.R. v. Noem*, No. 25-CV-3962 (EK)(TAM), 2025 WL 3228840, at

7    *2 (E.D.N.Y. Nov. 19, 2025), *reconsideration denied*, No. 25-CV-3962 (EK)(TAM), 2026

8    WL 102611 (E.D.N.Y. Jan. 14, 2026) where the District Court for the Eastern District of

9    New York granted a motion for preliminary injunction in part and stayed recission of a

10    2022 Policy Alert which required USCIS to automatically consider whether an SIJS

11    petitioner should receive deferred action.

12        The Court in A.C.R. explained that:

13    Under the SIJS-DA [SIJS-Deferred Action] program, USCIS automatically
      considered whether an SIJS petitioner should receive deferred action. 2022
14    Policy Alert 3. SIJS-DA did not guarantee that an applicant would *receive*
      deferred action but rather that they would be considered for it. Under SIJS-DA,
15    USCIS hearing officers would grant deferred action if the "totality of the facts and
      circumstances" supported doing so. Compl. ¶ 66; *see also* 2024 USCIS Policy
16    Manual 5, ECF No. 9-26 (hereinafter "2024 Policy Manual"). One "strong
      positive" factor in favor of approval was whether the applicant had received a
17    court order declaring him eligible for the SIJS program. Compl. ¶ 66; *see also*
      2024 Policy Manual 5. In other words, SIJS created a presumption in favor of
18    deferred action.

19    *A.C.R*, 2025 WL 3228840, at *2. The Court further explained that in April 2025, the

20    USCIS began issuing SIJS approvals without corresponding deferred-action approvals

21    and on June 6, 2025 issued a Policy Alert "'eliminat[ing] automatic consideration of

22    deferred action (and related employment authorization)' for SIJS beneficiaries who

23    could not apply for adjustment of status because a visa was not available." *A.C.R*, 2025

24    WL 3228840, at *3 (quoting 2025 Policy Alert 2).

25

Petitioner represents that he was granted SIJS without deferred-action in May 2025 and that pursuant to the Court's decision in *A.C.R.*, the USCIS is required to consider him for deferred-action status. *A.C.R*, 2025 WL 3228840.

But even assuming USCIS is required to adjudicate whether petitioner is entitled to deferred action status, petitioner does not contend that he has, at this point, been granted deferred action status. Nor would petitioner be able to establish, under the 2022 Policy, that USCIS would necessarily be *required* to grant him deferred action (although the SIJS would create a presumption in favor of deferred action).

The Court declines, at this stage, to speculate regarding the outcome of any future adjudication of petitioner's deferred action status or the outcome of his appeal to the BIA, or any potential subsequent appeal to the Ninth Circuit.

    f.   Weighing the Factors

In sum, the Court finds that three factors weigh in favor of granting petitioner a bond hearing, and the remaining factors are neutral. Accordingly, petitioner's detention has become unreasonably prolonged and due process requires a bond hearing.

C.    Bond Hearing

When the Court has determined that a detainee has been subjected to mandatory detention under § 1225(b) for an unreasonably prolonged period in violation of due process, the proper remedy is a bond hearing; under *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) the government bears the burden of proving the detainee is a danger or flight risk by clear and convincing evidence. *See, e.g.*, *Banda*, 385 F. Supp. 3d at 1120; *Cardozo*, 2025 WL 2592275, at *2-3; *Rahman v. Garland*, No. 2:24-CV-02132-JHC-TLF, 2025 WL 1920341, at *4 (W.D. Wash. June 26, 2025), *report and*

1    *recommendation adopted sub nom. Anisur R. v. Garland*, No. 2:24-CV-02132-JHC-TLF,

2    2025 WL 1919252 (W.D. Wash. July 11, 2025).

3         The Court finds that petitioner is entitled to a bond hearing with the procedural

4    requirements of *Singh*: there must be a contemporaneous record of the hearing, and the

5    Government bears the burden of proving by clear and convincing evidence that

6    petitioner is a flight risk or danger to the community. *Singh*, 638 F.3d 1196.

7         Petitioner also argues that the immigration judge must consider ability to pay

8    bond, and whether there are appropriate conditions of supervision that could mitigate

9    any risk of danger or flight that his release would present. Dkt. 1. Regardless of whether

10   the Government meets its burden of proof to show dangerousness or risk of flight by

11   clear and convincing evidence, petitioner has a due process liberty interest in showing

12   (and the IJ considering) whether, if he were allowed bond, he could afford it and

13   whether there are conditions of release that would mitigate any danger and allow the

14   immigration authorities to monitor him and assure his appearance for future actions of

15   the Immigration Court. *See Black v. Decker*, 103 F.4th 133, 145-159 (2d Cir. 2024)[3]

16   (upholding a district court decision requiring the immigration court to consider ability to

17   pay, and potential conditions of release that would ensure his appearance, when setting

18   a bond amount); *Cantor v. Freden*, 761 F. Supp. 3d 630, 638-640 (W.D.N.Y. 2025)

19   (holding that in determining whether petitioner poses a flight risk, the IJ must consider

20

21   ───────────────────────────

22   [3] The First, Second, and Third Circuits have held that a bond hearing is required when
     mandatory detention under § 1226(c) becomes unreasonably prolonged so as to violate due
     process. *Black v. Decker*, 103 F.4th 133, 145-159 (2d Cir. 2024); *Reid v. Donelan*, 17 F. 4th 1, 7

23   (1st Cir. 2021); *German Santos v. Warden Pike County Corr. Facility*, 965 F.3d 203, 212-214
     (3d Cir. 2020). The Eighth Circuit has determined that there is no due process violation when

24   detention under § 1226(c) is prolonged if immigration proceedings are ongoing. *Banyee v.
     Garland*, 115 F.4th 928, 931-934 (8th Cir. 2024).

25

1    whether that risk may be mitigated by reasonable conditions of supervision or monetary

2    bond and in determining whether petitioner poses a danger to the community, the IJ

3    also must consider whether that danger may be mitigated by reasonable alternatives to

4    detention); *but see, Ashmuke v. ICE Field Office Director,* No. C23-1592-RSL, 2024 WL

5    4436949 (WD Wash. October 7, 2024) at *5 (finding *Singh* "does not require the [IJ in

6    conducting a bond hearing] to consider less restrictive alternative to detention in these

7    circumstances").

8         The petitioner should be allowed to present evidence regarding proposed

9    conditions for supervised release in the community and that posting bond would be

10    financially infeasible. *See M.P.L. v. Arteta,* No. 25-CV-5307 (VSB)(SDA), 2025 WL

11    2938993 (S.D.N.Y. October 16, 2025) at *5-*7 (analyzing the due process protections

12    and why a finding of non-dangerousness should not be a prerequisite to consideration

13    of ability to pay and possible conditions of release).

14    D.    Conditions of Confinement

15         As discussed above, petitioner alleges his mental health is severely and

16    detrimentally impacted by detention, and that he has not been provided adequate

17    mental healthcare at NWIPC. Dkt. 1 at 9-10, 19. Respondents argue in their response to

18    the petition that any conditions of confinement claims are not properly brought in a

19    habeas petition. Dkt. 6.

20         Generally, challenges to the legality or duration of confinement are pursued in a

21    habeas corpus proceeding, *see Crawford v. Bell*, 599 F.2d 890, 891 (9th Cir. 1979),

22    while challenges to conditions of confinement are pursued in a civil rights action, *see*

23    *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991).

24

25

1    But "this Court has, within the context of immigration habeas proceedings,

2    adjudicated Fifth Amendment conditions of confinement claims related to the COVID-19

3    pandemic." *Sarr v. Scott*, 765 F.Supp.3d 1091, 1104 (Mem) (W.D. Wash. 2025); *see*

4    *also Juarez v. Asher*, 556 F. Supp. 3d 1181, 1187-88 (W.D. Wash. 2021) (addressing

5    Fifth Amendment claims regarding the right to reasonably safe conditions); *Dawson v.*

6    *Asher*, 2020 WL 1704324, at *8-9 (W.D. Wash. Apr. 8, 2020) (explaining the

7    circumstances under which the Court undertook consideration of COVID-19-related

8    conditions of confinement claims in petitions brought under 28 U.S.C. § 2241); *Herrera*,

9    2025 WL 2382093, at *8–9.

10    Neither the United States Supreme Court, nor the Ninth Circuit, has resolved the

11    question of whether a conditions of confinement claim may be brought as a claim

12    requesting release in habeas corpus. *See Bell v. Wolfish*, 441 U.S. 520, 526 n.6 (1979);

13    *Nettles v. Grounds*, 830 F.3d 922, 931 (9th Cir. 2016); *Dawson*, 2020 WL 1704324, at

14    *8; *Herrera*, 2025 WL 2382093, at *8–9.

15    While the question remains unresolved, in *Pinson v. Carvajal*, 69 F.4th 1059 (9th

16    Cir. 2023), the Ninth Circuit determined the convicted prisoners' conditions of

17    confinement claims raised in a § 2241 habeas petition did not sound in habeas and

18    were therefore properly dismissed for lack of jurisdiction. *See Herrera*, 2025 WL

19    2382093, at *8–9. The Court in *Pinson* stated "[w]e conclude that [Petitioner] has failed

20    to allege facts to support his legal contention that his detention was unlawful because

21    *no set of conditions exist that would cure the constitutional violations at* [his detention

22    center]. Because [Petitioner's] claims lie outside the historic core of habeas corpus, we

23    conclude the district court properly found it lacked jurisdiction to hear [his] petition."

24

25

1    *Pinson*, 69 F.4th 1059 (emphasis added). *Pinson* was decided in the context of a

2    habeas corpus challenge to conditions of confinement brought by prisoners convicted of

3    crimes and serving their sentences, and thus the Court did not directly address this

4    issue in the context of civil immigration detention. *Id.*

5        The Ninth Circuit in *Doe v. Garland*, 109 F.4th 1188 (9th Cir. 2024), in addressing

6    a petitioner detained under § 1226(c), also cited *Pinson* in distinguishing core and non-

7    core habeas claims. *See Herrera*, 2025 WL 2382093, at *8–9. The Court noted that

8    "*Pinson* solidified the rule that a habeas claim is one challenging the fact of

9    confinement, rather than the conditions of confinement." 109 F.4th at 1194. The Court

10   cited *Pinson* in *Doe* (an immigration habeas case) and did not distinguish it on the

11   grounds that the *Pinson* petitioners were convicted prisoners. *Doe*, 109 F.4th at 1194;

12   *Herrera*, 2025 WL 2382093, at *8–9. But the Court in *Doe* was also not required to

13   squarely address whether *Pinson* necessarily applied in the immigration context. *Id.*

14       Here, petitioner is a civil detainee. *See Zadvydas v. Davis*, 533 U.S. 678, 690

15   (2001); *Herrera*, 2025 WL 2382093, at *8–9. In cases of pretrial detention of a person

16   who is detained on probable cause but not yet convicted of a criminal offense, a district

17   court must determine, under the Fifth and Fourteenth Amendments "whether those

18   conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. at 535; *see*

19   *also Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015); *Herrera*, 2025 WL 2382093, at

20   *8–9. Punishment may be shown through an express intent to punish or a restriction or

21   condition that is not "reasonably related to a legitimate governmental objective[.]"

22   *Wolfish*, 441 U.S. at 539; *see also Kingsley*, 576 U.S. at 398 ( "a pretrial detainee can

23   prevail by providing only objective evidence that the challenged governmental action is

24

25

1    not rationally related to a legitimate governmental objective or that it is excessive in

2    relation to that purpose"); *Herrera,* 2025 WL 2382093, at *8–9.

3            If immigration detention is punitive, that detention would be a Fifth Amendment

4    due process violation and habeas corpus relief – and release – is an appropriate

5    remedy. *Wong Wing v. United States,* 163 U.S. 228, 236 (1896); *see also, Zadvydas,*

6    533 U.S. at 693-94. Determining whether a particular sanction, even if Congress did not

7    intend for it to be punitive, nevertheless is so punitive that it could "'transform what was

8    clearly intended as a civil remedy into a criminal penalty'", the Court has considered a

9    list of seven non-exclusive considerations. *U.S. v. Ward,* 448 U.S. 242, 249 (1980)

10    (quoting *Rex Trailer Co. v. United States,* 350 U.S. 148, 154 (1956)). The Court

11    reviews: ""Whether the sanction involves an affirmative disability or restraint, whether it

12    has historically been regarded as a punishment, whether it comes into play only on a

13    finding of scienter, whether its operation will promote the traditional aims of punishment

14    – retribution and deterrence, whether the behavior to which it applies is already a crime,

15    whether an alternative purpose to which it may rationally be connected is assignable for

16    it, and whether it appears excessive in relation to the alternative purpose assigned . . . ."

17    *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 168 (1963) (footnotes omitted).

18        The Framers of the U.S. Constitution considered the writ of habeas corpus to be so

19    critical to the protection of individual liberty that they identified specific and limited

20    grounds for suspension of the writ. *Boumediene v. Bush,* 553 U.S. 723, 743 (2008). The

21    writ of habeas corpus "protects the rights of the detained by affirming the duty and

22    authority of the Judiciary to call the jailer to account." *Id.* at 745. The Court has power to

23    conduct meaningful review of the cause for detention and the executive's power to

24

25

1    detain, and to issue an equitable remedy under the writ of habeas corpus that includes

2    release of the prisoner, and the means to correct errors in the government's process. *Id.*

3    at 779-787.

4            "The writ of habeas corpus is the fundamental instrument for safeguarding

5    individual freedom against arbitrary and lawless state action. Its preeminent role is

6    recognized by the admonition in the Constitution that: 'the Privilege of the Writ of

7    Habeas Corpus shall not be suspended. . .' U.S. Const., Art. 1, s 9, cl. 2. The very

8    nature of the writ demands that it be administered with the initiative and flexibility

9    essential to ensure that miscarriages of justice within its reach are surfaced and

10   corrected." *Harris v. Nelson,* 394 U.S. 286, 291 (1969). The federal habeas corpus

11   statute, 28 U.S.C. § 2243, allows the Court to "dispose of the matter as law and justice

12   require. . . ." The mandate of habeas corpus is "broad with respect to the relief that may

13   be granted." *Carafas v. LaValle,* 391 U.S. 234, 239 (1968). Because of the serious

14   constitutional issues identified by petitioner, the Court may expand the record and

15   conduct hearings— as necessary to "dispose of the matter as law and justice require."

16   *See generally, Hassoun v. Searls,* 1:19-CV-00370 EAW, 2020 WL 408349 (W.D. N.Y.

17   January 24, 2020) (describing the authority for, and parameters of, an evidentiary

18   hearing under 28 U.S.C. § 2241 in the context of an immigration-related habeas corpus

19   petition).

20           The Court cannot determine on the existing record whether there is jurisdiction

21   for the Court to grant habeas corpus relief on petitioner's allegation of a related claim for

22   habeas corpus relief (Dkt. 1 at 2-3, 13, 19-22), based on the due process allegations

23   about the nature and length of confinement being punitive due to conditions of

24

25

ORDER GRANTING HABEAS PETITION IN PART - 22

confinement that result in exacerbation of mental health conditions, that petitioner has been subjected to torture in his country of nationality and is therefore negatively affected by prolonged and allegedly punitive conditions of confinement, and lack of mental health treatment at NWIPC. If petitioner is not released, the Court will maintain jurisdiction and consider whether to expand the record and potentially conduct an evidentiary hearing regarding whether petitioner would be entitled to habeas relief based on allegations that his continued confinement in the context of deteriorating mental health and lack of treatment is punitive.

**CONCLUSION**

For these reasons, the Court GRANTS the habeas petition as provided below. The Court finds petitioner's ongoing and prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates the Due Process Clause of the Fifth Amendment to the United States Constitution. The respondents are directed to:

A.    Hold a bond hearing **to occur within 7 calendar days** of this order.

      1. The bond hearing shall comport with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) – there must be a contemporaneous record of the hearing, and the Government bears the burden of proving by clear and convincing evidence that petitioner is a flight risk or danger to the community;

      2. The Immigration Judge shall allow petitioner to present evidence of financial circumstances or alternative conditions of release that would mitigate any potential dangerousness or risk of flight;

3. Or, in the alternative, the Government shall immediately release petitioner under appropriate conditions of release.

4. The parties are directed to file, on or before February 17, 2026, a joint status report with the Court regarding the bond hearing and whether petitioner has been released.

5. If petitioner is not released based upon the Court ordered bond hearing, the Court will hold a status conference regarding expanding the record, and a possible evidentiary hearing regarding petitioner's allegations that his detention is punitive due to conditions of confinement that result in exacerbation of mental health conditions, that petitioner has been subjected to torture in his country of nationality and is therefore negatively affected by prolonged and allegedly punitive conditions of confinement, and availability of appropriate mental health treatment at NWIPC.

6. The Court will entertain a motion for attorney fees and costs. Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412, and shall be noted under Local Rule 7(d)(3).


Dated this 6th day of February, 2026.



*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge

ORDER GRANTING HABEAS PETITION IN PART - 24